# *Ex parte* Pearson.

*Application for Mandamus to Probate Judge, in matter of Exemptions to Decedent's Widow.*

1. *When mandamus lies.*—This court will not award a *mandamus* to a probate judge, commanding him to vacate an order requiring an administrator to pay a sum of money to the intestate's widow, as exempt from administration and the payment of debts (Code, §§ 2825-7), until a proper application has been first made to the Circuit Court, and refused.

2. *Exemptions of personalty to decedent's widow and children, as affected by residence.*—The exemption of personal property to the widow and children of a decedent, like the exemption of a homestead, is intended for the benefit of residents, and it contemplates the existence of the family relation in this State; hence, when the decedent died here, after a residence of several years, while his family continued to reside at his former residence in New York, and never came to Alabama until after his death, they are not entitled to the statutory exemption of $1,000.

Application by petition by B. R. Pearson, as administrator of the estate of T. N. Jube, deceased, for a writ of *mandamus,* or other appropriate writ, to Hon. F. C. RANDOLPH, judge of the Probate Court of Montgomery, commanding him to vacate and set aside an order made on the 27th January, 1885, on the petition of said decedent's widow, requiring the administrator to pay over to her, as exempt property for the benefit of herself and her several minor children, the sum of $456.85, assets of the estate in his hands. The right to the exemption was contested by the administrator, who also demurred to the petition; but his demurrer was overruled, and, on the admitted facts, the probate judge made an order as prayed. The administrator reserved a bill of exceptions to the rulings and order of the court, and makes it an exhibit to his petition in this court. The agreed facts are stated in the opinion of the court.

ARRINGTON & GRAHAM, for petitioner.

WM. S. THORINGTON, *contra.*

CLOPTON, J.—This is an application for a writ of *man-damus,* or other appropiate writ, to be directed to the probate judge of Montgomery county, commanding him to vacate an order, that the administrator of the estate of T. N. Jube pay to the widow of the decedent a specified sum of money, as exempt from administration and the payment of debts.

In *Ex parte Reavis,* 50 Ala. 210, on the application of Mrs. Reavis, a rule *nisi* was awarded, requiring the probate judge of Sumter county to show cause why a peremptory *mandamus* should not issue, to compel him to vacate an order disallowing allotments of personal property as exempt from administration. Whether cause was thereafter shown, or whether the probate judge vacated the order without further proceedings, does not appear. The report of the case shows, that the application was *ex parte,* and that the question of jurisdiction was not raised or called to the attention of the court, and was not considered. In *Ex parte Dickson,* 64 Ala. 188, a *mandamus* was issued to the Probate Court, to compel that court to proceed and make final settlement of the accounts of an executor. To this case the same observation is applicable: the question of authority was not made, nor considered. In every case where the question has been raised, the ruling has been adverse to the power.

In *Ex parte Tarleton,* 2 Ala. 35, it is said : " The revisory power of the Circuit Court of Montgomery is adequate to a re-examination of the case, and to afford relief as ample as the law can grant. This being assumed, it is clear that this court is impliedly inhibited from issuing a remedial or original writ to a court of Revenue and Roads, unless, perhaps, where the Circuit Court refuses its interference." In *Ex parte Russell,* 29 Ala. 817, which is the leading case, it was held, that this court will not, in the first instance, award a prohibition to the Probate Court, and that application must be first made to the Circuit Court. It was said : " The Circuit Court of Sumter is invested with authority to exercise a general superintendence over all inferior jurisdictions ' in that county ; and may, therefore, issue the writ of prohibition, if the petitioner shows that he is entitled to it. If that court, upon a proper application, refuses to interfere, or if it takes jurisdiction, and mistakes the law,' it will then be sufficiently early for a resort to this court." And in *Leslie v. Tucker,* 57 Ala. 483, which was an appeal from the judgment of the Probate Court, dismissing the petition for the appointment of three proper persons to appraise and set apart one thousand dollars worth of personal property

[Ex parte Pearson.]

as exempt to the widow and minor children, the appeal was dismissed, and it was observed : " The remedy, consequently, if any be required, would be by *mandamus* from the Circuit Court to the judge of probate."

By section 2, Article VI of the Constitution, the Supreme Court, except in cases otherwise directed therein, is invested with appellate jurisdiction only, under such restrictions and regulations, not repugnant to the constitution, as may from time to time be prescribed by law; and is invested with the power to issue such remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions. By statute, this court is impliedly prohibi td from exercising original jurisdiction in the issue and determination of writs of *mandamus*, in relation to matters of which any other court has jurisdiction; and from issuing remedial and original writs, in the exercise of appellate jurisdiction, except when necessary to give it a general superintendence and control of inferior jurisdictions.—Code, 1876, § 571. And by section 657, the Circuit Court has authority to exercise a general superintendence over all inferior jurisdictions. By the statutes, the Circuit or City Court has jurisdiction of the matter; a general superintendence over the Probate Court of Montgomery county. The issue of a *mandamus* directly from this court, to the Probate Court, is not necessary to give a general superintendence and control. Such superintendence and control are acquired by an appeal from the judgment of the judge of the Circuit or City Court, as the case may be, on the application for the writ of *mandamus*. For these reasons, the application must be dismissed.

Notwithstanding, we will consider the right of the widow and children to the exemption, as, in the opinion of counsel, a determination of the question will conduce to the prevention of useless litigation, and the expenditure of unnecessary costs. The facts, as shown by the agreed statement of counsel, are as follows: The decedent and his family formerly resided in the State of New York. About nine years preceding his death, the decedent, leaving his family in New York, came to Alabama, where he resided continuously to his death. His wife and children continued, in the meantime, to reside in New York, and were never in Alabama until after the death of the husband and father. The separation was without fault on the part of the wife, and they were never divorced, nor in any manner legally separated. Whether the separation was by agreement, or by abandonment on the part of the husband, we are not informed.

While it has been uniformly held, that the statutes allowing exemptions, being founded on the humane and benignant policy

of the protection of the family from dependence and want, should be liberally construed ; liberality of construction should not be extended so as to include cases without the spirit of the statute, and in contravention of the domestic policy of the State. To ascertain the intent of the legislature, all the statutes on the subject of exemption, constituting an entire system, should be construed *in pari materia.* Statutory exemptions are allowed for the benefit of residents, during life. The homestead, and personal property to the value of one thousand dollars, of any resident of the State, and some specified articles, are exempt from sale under legal process. In the event of the death of the owner and occupant of the homestead, leaving a family, consisting of a widow, or children, or both, the homestead of the family is exempt from the payment of debts contracted after April 23d, 1873.—Code, §§ 2820, 2821. Section 2824 directs that certain enumerated articles of property shall be exempt when any person dies, leaving a widow, or child or children under the age of twenty-one years, *members of his family.* To entitle the widow or children to the exemption provided by this section, it is essential that the decedent shall be a resident of the State, and that the wife and children shall be members of his family at the time of his death. Then follows section 2825, under which the present exemption is claimed, which provides : " Whenever the executor or administrator makes out an inventory of the estate of any decedent, who left surviving him a widow or minor child, or children, it shall be his duty to permit the widow, or the guardian of such minor child or children, if there be no widow, or if she does not act, to select from the property described in the inventory, to be exempt from administration for the payment of debts, the property hereinbefore declared to be exempt, and such additional property of the decedent as will amount to the value of one thousand dollars." The exemption of personal property to the value of one thousand dollars is additional to the exemption provided for by section 2824, and is, *ex vi termini*, allowed for the benefit of the same classes of persons—the widow or child or children who are members of the family of the decedent. The solution of the right to the exemption hinges, therefore, on the determination of the question, whether the widow and children were, in the meaning of the statute, members of the family of the decedent at the time of his death.

It may be said generally, that to constitute a family, there must exist the relation of husband and wife, or of parent and child, or descendants of child : a condition of dependence on one or the other of these relations. It is not necessary that all shall actually live under the same roof, or within the same curtilage. Some may be temporarily absent, for the purposes of

education, or of business, or pleasure, or from pressing neces-
sity ; but the residence of the husband and father must be the
central place, which all regard, and to which there is the inten-
tion of returning, as the home.—the center of common inter-
ests, of marital and parental dependence and domestic happi-
ness.   In *Allen v. Manassee,* 4 Ala. 554, in which the plaintiff,
who claimed the exemption, had been residing in this State three
or more years, having a wife and one or more children residing
in another State, where his actual residence was before coming
to this State, it was held that the plaintiff was not one of the
class of persons—the head of a family in the State—within the
protection of the statute ; and GOLDTHWAITE, J. observed:
" This connection, too, which creates the exemption, must exist
in this State.   Such, indeed, are the very terms of the enact-
ment ; but, without them, it would be difficult to conceive any
sound reason for extending our legislation beyond our own
limits."   In case of realty, " *the homestead of the family* " is
in terms exempt ; which implies actual occupancy and residence,
except in case of a renting as provided by statute.   The privi-
lege of exemptions of personal property is allowed to the
same class of persons—members of the family.   It evidently
was not the intention to confer a homestead exemption on per-
sons only residing in the State, and at the same time to confer
an exemption of personal property, whether the beneficiaries
resided in or out of the State.

It is conceded, as a general rule, a married woman follows
the domicile of her husband : his domicile is regarded as the
matrimonial domicile.   Nevertheless, for many purposes, such
as for divorce, maintenance in case of abandonment, and similar
purposes, the wife may have an actual residence other than the
matrimonial domicile.   The residence may be different from
the legal domicile.   In case of abandonment by the husband, or
separation, indicating permanence, accompanied by residence in
different States, the legal fiction, that the wife follows the
domicile of the husband, is too unsubstantial on which to found
a right to legislative bounty, dependent on the constituency of
a resident family.

To extend the provisions of the statutes exempting property
from the payment of debts to persons without our territorial lim-
its, is in contravention of the policy and duty of every sovereignty
to protect its own citizens—its domestic creditors.   The terms
of the statute should be clear and ambiguous, before the courts
can declare such to be the legislative purpose.   The term *family*
is used in the statutes in its popular acceptation.   Considering
the statutes as comprising a system of exemptions from the
payment of debts, they were manifestly conceived in the spirit
and policy of beneficence to residents of the State, and were

[Alford v. Lehman, Durr & Co.]

not intended to operate in favor of those who were never residents, and who were never under its protection and laws, to the detriment of residents. They contemplate the collection of husband and wife, or of parent and children or descendants of children, under such circumstances that the condition of dependence on one of the relations, which is the essential characteristics of a family, exists in this State. In the case of a permanent separation, the wife and children continuing to reside in the State of the former residence, and the husband and father coming to and residing alone in this State, the condition of dependence, which entitles the widow and children to the exemptions in event of his death, does not exist.

Application dismissed.